UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

SHAND NASH,

       Plaintiff,

   -v-                         No.  11 Civ. 7327 (LTS)(RLE)

C.O. ROBERT KRESSMAN et al.,

       Defendants.

------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

       Shand Nash ("Plaintiff") brings this action, pursuant to 42 U.S.C. § 1983, against

Defendants Westchester County ("WC"); Westchester County Health Care Corporation

("WCHCC"); Assistant Commissioner/Warden Robert Doty ("Doty"); Deputy Commissioner

Kevin Cheverko ("Cheverko"); Sergeant James Conway ("Conway"); Sergeant Richard

Maccabee ("Maccabee"); Sergeant Gregory Bell ("Bell"); Sergeant Jeffrey Camera ("Camera");

Sergeant Alvin Rogers ("Rogers"); Correctional Officers Robert Kressman ("Kressman"), Hugh

Rennalls ("Rennalls"), Michael Simmons ("Simmons"), Terence Gilmore ("Gilmore"), Jaime

Aldarando ("Aldarando"), Martinez ("Martinez") and Brugger ("Brugger"); Nurse Practioner

Marie Sussman ("Sussman"),[1] the Westchester County Jail's Medical Contract Monitor June

---

[1] Because Defendant Sussman was late in authorizing the District Attorney's Office for
Westchester County, which represents all of the other Defendants, to enter an
appearance on her behalf, the other Defendants' motion to dismiss had already been
filed before that appearance was entered.  (See docket entry no. 45.)  Sussman filed a
separate motion to dismiss a month later.  (See docket entry no. 62.)  As Defendant
Sussman's motion to dismiss raises the same arguments as the other Defendants'
motion, and the parties have agreed that Plaintiff's opposition to the first motion to
dismiss shall be treated as an opposition to both motions, the Court does not
distinguish between the two motions for the purposes of this Memorandum Opinion
and Order.

Yozzo ("Yozzo"); and its Medical Director, Dr. Gail Bailey-Wallace ("Dr. Bailey-Wallace") (collectively, "Defendants").  In his Second Amended Complaint ("SAC"), Plaintiff asserts seven causes of action against various Defendants, alleging inter alia, that Defendants used excessive force against him, exhibited deliberate indifference to his serious medical needs, denied him access to the courts, interfered with his free exercise of religion, and violated his right to be free from excessive confinement during the time period in which Plaintiff was confined in the Westchester County Jail ("WCJ").  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

Defendants move to dismiss Plaintiff's SAC asserting, among other things, that the SAC is untimely and fails to state a claim upon relief may be granted.  Having considered carefully the parties' submissions and arguments, for the following reasons, the Defendants' motion to dismiss is granted in part and denied in part.

BACKGROUND[2]

Plaintiff alleges that, when he was committed to the custody of the WCJ on July 25, 2008, he told WCJ personnel that he had limited vision in his left eye due to a previous injury.  (SAC ¶ 62.)  On September 1, 2008, Plaintiff claims that he was involved in an altercation with his cell mate and that when a member of the Emergency Response Team ("ERT"), a group of specially-trained correctional officers, responded to the situation, an ERT member injured Plaintiff's left eye further by pushing him into the cell window.  (Id. ¶ 64.)  As a result of this incident, the Plaintiff was placed in the Special Housing Unit ("SHU").  (Id.)  On

---

[2] The following allegations are contained within Plaintiff's Second Amended Complaint and are accepted as true for the purposes of the instant motion.

September 15, 2008, Plaintiff was involved in another altercation, with Defendants Kressman and Conway.  (Id. ¶ 65.)  Before escorting Plaintiff to a meeting with his attorney, Kressman allegedly ordered Plaintiff to remove two undershirts and an argument ensued, during which Kressman attacked Plaintiff, punching him in the face and striking him in his left eye several times, thus causing his already-injured eye further damage.  (Id.)  Plaintiff further alleges that Conway then intervened in the altercation and deployed Oleoresin Capsicum ("OC") spray on Plaintiff's face, mouth and head.  Plaintiff alleges that Conway did so for a longer time period than permitted by protocol, and at a closer distance, even after Plaintiff had fallen to the ground. (Id.)

Defendants Bell, Camera, Rennalls, Rogers, Simmons, "and/or Maccabee" then escorted Plaintiff to a shower to clean off the OC.  (Id. ¶ 72.)  Plaintiff alleges that the New York State Emergency Medical Protocol required Defendants to decontaminate him with cold water for a period of 20 minutes, but that he was only decontaminated with hot water for approximately 50 seconds.  (Id. ¶¶ 69. 72.)  After the decontamination, the aforementioned Defendants escorted Plaintiff to a medical station where Sussman provided him with additional treatment.  (Id. ¶ 74.)  According to the Plaintiff, Sussman decontaminated Plaintiff for less than two minutes and ignored Plaintiff's complaints that he was still experiencing excessive pain. (Id.)  Plaintiff states that he was crying and told Sussman that he was unable to see out of his left eye, but that she told him, "It'll get better" and cleared him to return to the SHU.  (Id.)

That same day (September 15, 2008),[3] Defendants Aldarando, Gilmore, Conway, Kressman and Maccabee allegedly submitted false reports regarding the physical altercation that

_____

[3]     Plaintiff refers to this incident as having occurred on September 15, 2012, several times in the SAC, but this appears to be a typographical error.

occurred in the male search area and Plaintiff's subsequent decontamination.  (Id. ¶¶ 77-83.)

The WCJ held a disciplinary proceeding for the Plaintiff; the hearing officer found Plaintiff guilty

on the basis of the allegedly false disciplinary reports; and Plaintiff claims that he was sentenced to

365 days in the SHU for the September 15, 2008, incident.  (Id. ¶ 93.)  Plaintiff appealed the

decision, but his appeal was denied; Plaintiff contends that he was prevented from exhausting his

administrative remedies while in the SHU as there were no grievance forms available and he was

denied access to the library.  (Id. ¶¶ 92-95.)

   Plaintiff alleges that, meanwhile, on September 17, 2008, WCJ medical personnel

had to reschedule his eye examination as it was not possible at that time to conduct an adequate

examination, due to the lingering effects of the OC spray.  (Id. ¶ 88.)  Defendant Dr. Bailey-

Wallace signed off on this decision.  (Id. ¶ 88.)  On October 29, 2008, Dr. Kaskawits, an

optometrist, reported that he was unable to perform an adequate examination of Plaintiff's eye

due to Plaintiff's discomfort and recommended that Plaintiff see an ophthalmologist.  (Id. ¶ 89.)

Dr. Bailey-Wallace reviewed Dr. Kaskawits' report and concluded that it was unclear why

Plaintiff could not open his eye, but that there was no reason to refer him to an ophthalmologist.

(Id.)

   Plaintiff alleges that, on December 5, 2008, Defendant Doty wrote a report on the

investigation he had done, in response to a request from the New York State Commission of

Corrections ("NYSCC"), into the incident of September 15, 2008.  (Id. ¶ 97.)  Plaintiff further

alleges that Doty knowingly failed, or refused to, reference in his report a surveillance video of

the September 15, 2008, incident.  (Id. ¶¶ 97-98.)  According to Plaintiff, the surveillance video

would have revealed that the incident reports were false and that Plaintiff had not committed any

disciplinary infractions.  (Id. ¶ 97.)  Plaintiff also claims that Defendant Cheverko, the Deputy

Commissioner at the WCJ, forwarded this report to the NYSCC but also refused to request, consider, or review the videotape.  (Id. ¶ 100.)

Plaintiff claims that he complained to Defendant Yozzo, WCJ's Medical Contract Coordinator, regarding the facility's failure to provide adequate medical treatment and, on December 5, 2008, Yozzo wrote an email in which she characterized Plaintiff's inability to open his left eye as a failure to cooperate with medical examinations.  (Id. ¶ 96.)  She also stated that Plaintiff's injury had not seriously affected his ability to perform daily activities.  (Id.)  This conclusion was based on the fact that, in a letter that Plaintiff had written to the Governor, Plaintiff's handwriting was properly aligned, which Yozzo found demonstrated that Plaintiff's "visual decline bilaterally obviously has not affected his capability to perform activities of daily living . . ."  (Id.)

Plaintiff also alleges that, on July 22, 2009, Defendants Martinez and Brugger retaliated against Plaintiff for attempting to pursue legal claims against various WCJ officials by confiscating and destroying his legal documents.  (Id. ¶ 103.)  Plaintiff claims that the actions taken by these Defendants prevented him from filing an action in federal court and from filing an application for a late notice of claim.  (Id. ¶ 104.)

The SAC also describes how, in 2008, the Department of Justice conducted an inspection of the WCJ and found that the facility had a pattern of failing to "(1) adequately protect inmates from and serious risk of harm from staff; and (2) provide inmates with adequate medical and mental health care."  (Id. ¶ 23.)  Plaintiff includes a list of over twenty inmates who have filed claims regarding the denial of their medical care while they were imprisoned at the WCJ.  (Id. ¶¶ 26-52.)

Plaintiff filed the instant action against Defendants Kressman, Conway, Gilmore,

Dr. Bailey-Wallace, WCHCC, Brugger, Martinez (and other defendants who are no longer

named) pro se on October 12, 2011, and filed his first amended complaint on May 15, 2012,

adding Defendants Maccabee, Bell, Camera, Rennalls, Rogers, and Simmons.  After obtaining

counsel, Plaintiff filed the SAC on November 8, 2012, adding Defendants Yozzo, Sussman and

Aldarando, Doty and Cheverko and WC and eliminating some of the other originally-named

defendants.

        In Count I of the SAC, Plaintiff asserts Monell liability[4] on the basis of

allegations that WC condoned or permitted a custom and practice at the WCJ of using excessive

force against inmates; that WC and WCHCC condoned or permitted a pattern or practice of

deliberate indifference to the inmates' medical needs; that WC condoned or permitted a custom

and practice of racial discrimination against inmates at the WCJ and that WC failed to supervise

its corrections personnel to such an extent that they exhibited a deliberate indifference to the

WCJ's conditions of confinement.  (SAC ¶¶ 109-112.)  In Count II, Plaintiff alleges that

Defendants Kressman and Conway used excessive force on him during the September 15, 2008,

incident.  In Count III, Plaintiff alleges that Defendants Bell, Camera, Rennalls, Rogers,

Simmons, Maccabee and Sussman acted with deliberate indifference to Plaintiff's serious

medical needs, during Plaintiff's decontamination after the September 15, 2008, incident.  In

Count III, Plaintiff also alleges that Dr. Bailey-Wallace acted with deliberate indifference to his

medical needs when she signed off on the September 17, 2008, WCJ medical report, which

stated that an eye examination of Plaintiff was not possible at that time, due to the lingering

effects of the OC spray, and when she concluded, on October 29, 2008, that Plaintiff should not

be referred to an ophthalmologist.  (SAC ¶¶ 88, 90, 119.)  Finally, in Count III, Plaintiff alleges

---

[4]        See Monell v. Dep't of Soc. Serv., 436 U.S. 658 (1978).

that Defendant Yozzo acted with deliberate indifference to his medical needs, by ignoring his complaints of blindness and not intervening on his behalf and providing him access to medical specialists in December 2008.  (Id. ¶¶ 96, 120.)

In Count IV of the SAC, Plaintiff alleges that Defendants Martinez and Brugger retaliated against him by confiscating his legal papers and denying him access to the courts in July 2009.  (Id. ¶¶ 103, 122-24.)  Plaintiff further alleges in Count V that WC interfered with his free exercise of his religion, but does not specify a date when this occurred.  In Count VI, Plaintiff asserts a claim for wrongful excessive confinement against Defendants Cheverko, Doty, Aldarando, Gilmore, Conway, and Kressman, alleging that they wrote fraudulent reports regarding the September 15, 2008, incident and/or failed to intervene in the face of these reports and that these reports led to his wrongful confinement in the SHU in September 2008.  In Count VII, Plaintiff alleges that Defendants Bell, Camera, Rennalls, Rogers, Simmons, Maccabee, Sussman, Aldarando, Gilmore, Conway, Kressman, Martinez, Brugger, and Dr. Bailey-Wallace selectively treated Plaintiff on the basis of his race during the aforementioned incidents.

DISCUSSION

Timeliness of Plaintiff's Claims; Exhaustion of Administrative Remedies

The statute of limitations for Section 1983 claims "is that which the [forum] [s]tate provides for personal-injury torts" Wallace v. Kato, 549 U.S. 384, 387 (2007), which, in New York, is three years.  See N.Y. C.P.L.R. § 214(5); see also Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002).  "A claim accrues, and the limitations period begins to run, 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'"  Walters v. City Dept. of Correction, 517 F. App'x 41, 42 (2d Cir. 2013) (citation omitted).  An argument

that a claim is barred by the applicable statute of limitations is an affirmative defense but, if a plaintiff's allegations "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." Jones v. Bock, 549 U.S. 199, 215 (2007).

For the purposes of determining the timeliness of Plaintiff's claims and in light of the prison mailbox rule, Plaintiff's original complaint, filed pro se, is deemed to have been filed on October 6, 2011, the date appearing on the cover letter to the complaint, rather than October 12, 2011, which is the date on which the complaint was filed by the Court. See, e.g., Torres v. Irvin, 33 F. Supp. 2d 257, 270 (S.D.N.Y. 1998) ([p]ro se prisoners' papers are considered filed when they are handed over to prison officials for forwarding to the court" and "the Court assumes that [the prisoner] gave his petition to prison officials for mailing on the date that he signed it") (collecting cases). Accordingly, all causes of action that accrued before the signature date are untimely absent a basis for tolling.[5]

Timeliness of Plaintiff's Original Claims against the Individual Defendants

As explained above, Plaintiff brings a variety of claims against the individual Defendants, for incidents that occurred in September 2008, October 2008, December 2008 and July 2009. Defendants argue that any of Plaintiff's claims that accrued prior to October 6, 2008,

---

[5]     Plaintiff contends that because his original complaint is dated September 13, 2011, the Court should assume that he gave it to prison officials on that day. However, because Plaintiff's complaint was sent together with the October 6, 2011 cover letter, and all of the materials were stamped and filed together, the Court finds no basis for a proper inference that any of the documents was given to prison officials on September 13, 2011.

are untimely because Plaintiff did not file his original complaint until October 6, 2011.  Plaintiff

contends that his claims are timely because the three-year statute of limitations applicable to his

claims under 42 U.S.C. § 1983 is tolled in light of the administrative remedy exhaustion

requirement of the Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e.[6]  Plaintiff

relies on Gonzalez v. Hasty, 651 F.3d 318 (2d Cir. 2011), where the Second Circuit held that the

statute of limitations applicable to a claim subject to the PLRA is equitably tolled during the time

period when a prisoner is actively exhausting his administrative remedies.  The tolling period

associated with active exhaustion efforts begins "when the prisoner is pursuing such remedies."

651 F.3d at 322, n.2.  Defendants further argue that all of Plaintiff's claims should be dismissed

because he did not exhaust his administrative remedies.  The Second Circuit has held, however,

that "exhaustion may be achieved in situations where prison officials fail to timely advance the

inmate's grievance or otherwise prevent him from seeking his administrative remedies."  Abney

v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004); see also White v. Clark, No. 09:12 Civ. 0986,

2012 WL 5877160, at *8 (N.D.N.Y. Nov. 20, 2012) ("a plaintiff whose access to the grievance

process has been hindered or foiled by actions of prison officials [is] excused from the PLRA's

exhaustion requirement and permitted to file suit without having completed that process") (citing

Hemphill v. New York, 380 F.3d 680, 686-91 (2d Cir. 2004)).

      According to Plaintiff, despite the challenges that he faced in pursuing legal

remedies while in the SHU (i.e., "grievance forms were not available and were not provided"

(SAC ¶ 92)), he managed to serve a notice of claim on WC, on or around December 15, 2008, and

---

[6]     The PLRA requires that inmates exhaust their administrative remedies before filing suit under Section 1983.  See 42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

his "booking folder, medical records, video from the male search area and ERT video" were submitted to the WC Attorney's Office shortly thereafter for review.  (Id. ¶¶ 101-102.)  Plaintiff further alleges that he wrote to the Governor and that Defendant Yozzo's denial of specialist care to him on December 5, 2008, was based on Yozzo's assessment of his ability to write a letter to Governor Patterson on lined paper with properly aligned script.  (SAC ¶ 96.)  However, there is nothing more in the SAC indicating that Plaintiff was actively pursuing administrative remedies after December 2008.  Plaintiff has thus pleaded facts indicating that he was making active efforts to complain within, and outside of, the WCJ from shortly after the September 15, 2008, incident until December 2008.  His pleading is sufficient to support an assumption, for the purposes of this motion practice, that the statute of limitations was tolled on account of his active exhaustion efforts from September to December 2008.

If the normal three-year statute of limitations for Section 1983 claims is treated as having been tolled from September through December 2008, his claims that accrued during that period would be timely if raised by December 2011, and his claims arising from the July 2009, incident, would be timely if raised by July 2012.  Plaintiff's original complaint, filed in October 2011, which asserted claims against certain of the individual defendants, is deemed timely-filed for purposes of this motion practice as to all claims.  The first amended complaint, filed in May 2012, is untimely, except for any claims arising out of the incident alleged to have occurred in July 2009, and the SAC, filed in November 2012, is untimely as to all claims.  The claims asserted in the SAC must therefore relate back to the original complaint (or the first amended complaint for any claims arising from the July 2009, incident) to survive the Defendants' motion to dismiss.

<u>Exhaustion of Administrative Remedies</u>

Plaintiff further alleges facts sufficient to plead plausibly that he was prevented from pursuing his administrative remedies in a timely fashion.  Plaintiffs' pleadings are indicative of efforts to obtain review.  Plaintiff alleges that he "was prevented from exhausting his administrative remedies while in the SHU; grievance forms were not available and not provided." (SAC ¶ 92.)  Plaintiff also alleges that "[w]hile in the SHU [he] was denied access to the law library" and that he was sentenced to 365 days in the SHU.  (SAC ¶ 93.)  Then, Plaintiff alleges, in July 2009, Plaintiff's legal papers were destroyed.  That destruction, he claims, prevented him from filing an application to file a late notice of claim or from filing a state or federal action while at the WCJ.  (<u>Id.</u> ¶¶ 103-104.)  In his original complaint, Plaintiff also alleges that the WCJ had a grievance procedure, which Plaintiff attempted to follow, but that it did not cover his specific claims.  (Compl. at 11.)  Defendants' motion must therefore be denied at this juncture to the extent that Defendants seek dismissal for failure to exhaust administrative remedies.


<u>Relation Back of Additional Claims Asserted in the SAC</u>

In addition to Plaintiff's claims in the original complaint for excessive force; deliberate indifference to his medical needs; and some form of denial of access to the courts against Defendants Kressman, Conway, Gilmore, Martinez, Brugger and Dr. Bailey-Wallace and a <u>Monell</u> claim against WCHCC, Plaintiff's SAC, which was filed on November 8, 2012, asserts claims for interference with the exercise of religion, wrongful excessive confinement, race-motivated denial of medical treatment and unconstitutional conditions of confinement as well as further and more explicit <u>Monell</u> claims, and adds Defendants WC, Cheverko, Doty, Maccabee, Bell, Camera, Rogers, Rennalls, Simmons, Aldarondo, Sussman, and Yozzo.  The new claims and

new Defendants are untimely and must be dismissed unless they relate back to the original

complaint or, as to claims arising from the July 2009 incident, unless they relate back to the

original or the first amended complaint.

Federal Rule of Civil Procedure 15(c) provides that "[a]n amendment to a pleading

[that adds a claim or defense] relates back to the date of the original pleading when: . . . the

amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set

out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). An

amendment adding a defendant to a complaint relates back to the original pleading if the new

defendant has: "(i) received such notice of the action that it will not be prejudiced in defending on

the merits; and (ii) knew or should have known that the action would have been brought against

it, but for a mistake concerning the proper party's identity." Id.

In Count II of the SAC, Plaintiff alleges that Defendants Kressman and Conway

used excessive force on him during the September 15, 2008, incident. This allegation against

these two Defendants was raised in the original complaint and thus relates back and is timely. In

Count III, Plaintiff alleges that, after the September 15, 2008, incident, Defendants Bell, Camera,

Rennalls, Rogers, Simmons, Maccabee and Sussman acted with deliberate indifference to

Plaintiff's serious medical needs. In Count III, Plaintiff also alleges that Defendant Dr. Bailey-

Wallace acted with deliberate indifference to Plaintiff's medical needs on September 17, 2008,

and on October 29, 2008, and that Defendant Yozzo acted with deliberate indifference to his

medical needs, by ignoring his complaints of blindness and not intervening on his behalf and

providing him access to medical specialists, in December 2008. The September 15, 2008,

incident is mentioned in the original complaint, as are the incidents involving Dr. Bailey-Wallace.

However, the only one of these Defendants named in the original complaint is Dr. Bailey-

Wallace.  Accordingly, Count III of the SAC is only timely on its face as to Defendant Dr. Bailey-Wallace.

With regards to the SAC's allegations against Defendants Bell, Camera, Rennalls, Rogers, Simmons, Maccabee and Sussman, the original complaint describes the incidents from which these claims derive, but these individuals were not named as Defendants in the original complaint and were referred to in that pleading only as "correction officers" and the "nurse practitioner."  An amendment identifying a defendant who was unnamed in the original pleading because of lack of identifying information, rather than because of an identification mistake, does not relate back to the original pleading.  See, e.g., Barrow v. Wethersfield Police Dept., 66 F.3d 466, 467-70 (2d Cir. 1995) (explaining how Rule 15 was amended to allow a complaint to relate back when the plaintiff mistakenly sues the wrong entity or person, but holding that the "amended complaint identifying six police officers by name – filed, by any calculation, after the statute of limitations had run – did not correct a mistake in the original complaint, but instead supplied information [plaintiff] lacked at the outset").  Here, nothing in the record indicates that Plaintiff was mistaken about these Defendants' identities.  Accordingly, the claims are untimely as to Defendants Bell, Camera, Rennalls, Rogers, Simmons, Maccabee and Sussman.  Defendant Yozzo was not only not named as a defendant in the original complaint, but none of the allegations regarding the incidents in which Yozzo was involved were included in that pleading. Thus, Count III is also untimely as to Defendant Yozzo and survives only against Dr. Bailey-Wallace.

In Count IV, Plaintiff alleges that Defendants Martinez and Brugger retaliated against him by confiscating his legal papers and denying him access to the courts in July 2009. Martinez and Brugger were named in the original complaint and the incident in which they

destroyed Plaintiff's legal documents is alleged in that pleading.  Plaintiff's allegations against Martinez and Brugger thus " arose out of the [same] conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading" Fed. R. Civ. P. 15(c)(1)(B), and Count IV relates back and is timely.

In Count VI, Plaintiff brings a claim for wrongful excessive confinement against Defendants Cheverko, Doty, Aldarando, Gilmore, Conway, and Kressman, alleging that they wrote fraudulent reports regarding the September 15, 2008, incident and/or failed to intervene when they saw the allegedly fraudulent reports and that these reports led to his wrongful confinement in the SHU in September 2008.  This claim was not asserted in the original complaint and Cheverko, Doty and Aldarando were not named as defendants in the original complaint.  Plaintiff acknowledges that he did not know of Cheverko, Doty and Aldarando's involvement when he first filed the complaint.  (See Pl. Mem. in Opp. at 18.)  Accordingly, Count VI does not relate back as to Cheverko, Doty and Aldarando.  See, e.g., Barrow, 66 F.3d at 467-68.  As for Defendants Gilmore, Conway and Kressman, who were named in the original complaint, "the inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading" and whether the new claim "arose out of the [same] conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  Hood v. City of New York, 739 F. Supp. 196, 200 (S.D.N.Y. 1990).  Here, the only mention of the SHU confinement in the original complaint is an allegation that Plaintiff "suffered emotional and mental pain" from going to the SHU.  (Compl. at 10.)  The original complaint does not contain any allegations regarding fake reports or wrongful excessive confinement and so this claim does not relate back.  Count VI is dismissed in its entirety.

Finally, in Count VII, Plaintiff alleges that Bell, Camera, Rennalls, Rogers, Simmons, Maccabee, Sussman, Aldarando, Gilmore, Conway, Kressman, Martinez, Brugger, and Dr. Bailey-Wallace selectively treated Plaintiff on the basis of his race during the aforementioned incidents.  There is no allegation of racial discrimination in Plaintiff's original complaint. Therefore, Count VII does not relate back and is dismissed as untimely.

Only the following claims against individual defendants survive the timeliness inquiry: Plaintiff's claims for excessive force against Kressman and Conway (Count II); for deliberate indifference to his serious medical needs against Dr. Bailey-Wallace (Count III); and for denial of access to the courts against Martinez and Brugger (Count IV).

Timeliness of Plaintiff's Monell-based Liability Claims

Under Section 1983, "a municipality c[an] be held liable for constitutional torts committed pursuant to a municipal custom or policy."  Pearl, 296 F.3d at 87.  In Plaintiff's Monell claims, brought under Count I, he alleges that WC condoned or permitted a pattern and practice of using excessive use of force on inmates in the WCJ, as well as a pattern and practice of racial discrimination against inmates in the WCJ.  (SAC ¶¶ 110-111.)  Plaintiff also alleges that the WC and the WCHCC condoned or permitted a pattern and practice of deliberate indifference to the medical needs and medical care of inmates.  (Id. ¶ 109.)  Although he does not refer to it as a Monell claim, Plaintiff also brings a claim under Section 1983 against the WC, alleging, in Count V, that the WC interfered with his right to free exercise of religion.  Defendants move to dismiss these claims as time-barred, arguing that they do not relate back to Plaintiff's original complaint, as WC was not named in that pleading.

In his original complaint, Plaintiff named the "Emergency Response Team," "Correctional Medical Services, Inc.," and the WCHCC as defendants, and he referred generally to problems with the staff at the WCJ.  Plaintiff also sought damages for excessive force and deliberate indifference to his medical needs in his original complaint.  Plaintiff's <u>Monell</u> claims regarding excessive force and deliberate indifference to his medical needs thus "share the same factual core" as the claims asserted in his original complaint and the claims themselves relate back.  <u>See</u> <u>Hood</u>, 739 F. Supp. at 200.  WCHCC was named in the original complaint.  Therefore, Plaintiff's Monell claims against the WCHCC for excessive force and deliberate indifference to inmates' medical needs also relate back and are timely.  The focus on institutional functions in the original complaint and administrative problems with the operation of the WCJ were sufficient to ensure that WC, whose County Attorney's Office was served with the Court's order concerning service in this action on December 7, 2011, (<u>see</u> docket entry no. 7 and docket entry dated January 3, 2012) had timely notice of the action such "that it will not be prejudiced in defending on the merits; and . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).

Plaintiff's allegation that Defendants condoned or permitted a custom and practice of racial discrimination against inmates in the WCJ does not relate back to the original complaint because the original complaint does not contain any allegations relating to racial discrimination.  Similarly, Plaintiff's claim for interference with free exercise of religion against the WC does not arise out of any facts or transactions alleged in the original complaint.  Therefore, Plaintiff's racial discrimination and free exercise of religion claims do not relate back and are dismissed as time-barred.

Merits of Plaintiff's Remaining Claims

Defendants assert that all of Plaintiff's claims are meritless and that any remaining claims should be dismissed for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all non-conclusory factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "'[c]onclusory allegations or legal conclusions masquerading as factual conclusions' will not withstand dismissal." Jacobs v. Carnival Corp., No. 06 Civ. 0606(DAB), 2009 WL 856637, at *3 (S.D.N.Y. Mar. 25, 2009) (citation omitted; alteration in original). The materials that may be considered on a motion to dismiss are those "asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).


Count II: Excessive Force Claim

Plaintiff alleges that Defendants Kressman and Conway used excessive force during the September 15, 2008, incident in violation of his constitutional rights, causing the injury to his left eye. (SAC ¶¶ 65-70.) Courts have made clear that not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson v. McMillian, 503 U.S. 1, 9 (1992). "It is [however] well established that whenever prison officials 'maliciously' and

'sadistically' utilize force to cause harm to inmates, the 'contemporary standards of decency,' relevant to a determination of the objective seriousness required for an Eighth Amendment analysis, are 'always violated.'" Randle v. Alexander, No. 10 Civ. 9235 (JPO), 2013 WL 2358601, at * 8 (S.D.N.Y. May 30, 2013). "In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Lindsey v. Butler, No. 11 Civ. 9102(RWS), 2013 WL 3186488, at *3 (S.D.N.Y. June 24, 2013) (internal quotation marks and citation omitted). Considering Plaintiff's allegations in the SAC that Kressman punched him in the face and Conway sprayed him even after he fell to the floor and that he lost vision in his left eye and had severe pain in his eye for more than one month after the incident, the Court finds, at this juncture, that Plaintiff has adequately pleaded a claim for excessive use of force against him and Defendants' motion to dismiss Count II is denied.

### Count III: Deliberate Indifference to Plaintiff's Medical Needs

Defendants also move to dismiss Plaintiff's claim for deliberate indifference to his serious medical needs against the remaining defendant, Dr. Bailey-Wallace. To sustain an Eighth Amendment claim arising out of alleged inadequate medical care, a plaintiff must prove "deliberate indifference to [his] serious medical needs." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). The deliberate indifference standard is comprised of an objective element and a subjective element. Id. "Thus, to avoid dismissal under Rule 12(b)(6), 'an inmate must allege that: (1) objectively, the deprivation the

inmate suffered was sufficiently serious'; and '(2) subjectively, the defendant official acted with a sufficiently culpable state of mind.'" Bell v. Jendell, No. 12 Civ. 6666(KMK), 2013 WL 5863561, at *3 (S.D.N.Y. Oct. 31, 2013) (quoting Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013)).  "An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety." Chance, 143 F.3d at 702 (internal quotation marks and citation omitted).  In applying this standard at the pleading stage, the Court accepts Plaintiff's allegations as true. Chance, 143 F.3d at 702.

Plaintiff alleges that Defendant Dr. Bailey-Wallace acted with deliberate indifference to Plaintiff's medical needs by denying him access to qualified medical personnel for his left eye.  According to the Plaintiff, Dr. Bailey-Wallace signed off on a decision to reschedule Plaintiff's eye exam because the effects of the OC spray had not yet dissipated and she did not schedule an appointment for Plaintiff with an ophthalmologist after WCJ's optometrist recommended that he see one.  Dr. Bailey-Wallace allegedly wrote: "P[atient] will be evaluated by [ ] Staff – unclear why he could not open his eye for evaluation by optometrist on site.  This is not a reason for referral to ophthalmologist."  (SAC ¶ 90.)

However, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim." See, e.g., Chance, 143 F.3d at 703 (stating that disagreement with medical professional's choice of treatment is insufficient for a deliberate indifference claim).  "Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment." Jordan v. Fischer, 773 F. Supp. 2d 255, 276 (N.D.N.Y. 2011) (citing Sonds v. St. Barnabas Hosp. Correctional Health Services, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)).  Here, Dr. Bailey-Wallace's decision to sign off on a form rescheduling Plaintiff's eye

examination and not to refer the Plaintiff to an ophthalmologist after he had seen an optometrist were medical decisions regarding the course of Plaintiff's treatment and are insufficient to establish a deliberate indifference claim.  As Dr. Bailey-Wallace was the last remaining Defendant named in Count III, Count III is dismissed in its entirety.

Count IV: Denial of Access to the Courts

Plaintiff also alleges that Defendants Brugger and Martinez denied him access to the courts in retaliation for Plaintiff's attempts to pursue legal claims for excessive force and deliberate indifference.  Plaintiff alleges in the original complaint that these Defendants put his property in dirty toilet water on the floor on July 22, 2009, and that he discovered after the incident that most of his legal documents were missing.  (Compl at 10.)  In the SAC, Plaintiff argues further that this was an act of retaliation "which prevented [Plaintiff] from filing an application to file a late notice of claim and prevented him from filing a federal action while in the WCJ."  (SAC ¶ 103.)  The Court will construe this claim, which is not clearly articulated in the SAC, as alleging that Brugger and Martinez interfered with Plaintiff's legal mail, implicating his rights to the courts and free speech as guaranteed by the Constitution.

In order to survive a motion to dismiss on a denial of access to the courts claim, a plaintiff must plead that the defendant's alleged conduct was "deliberate and malicious" and that the defendant's actions caused the plaintiff an actual injury, such as the dismissal of an otherwise meritorious action.  Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).  Plaintiff satisfies the first element because he alleges that the defendants intentionally destroyed his legal documents to prevent him from pursuing his legal claims.  (SAC ¶ 103.)  However, Plaintiff has not clearly alleged what "legal papers" were destroyed, the extent of the destruction, how the destruction

prevented him from accessing the courts or how it caused prejudice to his legal claim.  Mere

"delay in being able to work on one's legal action or communicate with the courts does not rise to

the level of a constitutional violation."  Jermosen v. Coughlin, 877 F. Supp. 864, 871 (S.D.N.Y.

1995).  Moreover, this incident occurred almost a year after Plaintiff was originally assaulted and

Plaintiff's grievances and attempts to file grievances during this time period belie any claim that

he was denied access to the Court.  Accordingly, Count IV is dismissed.


Qualified Immunity

        The individual Defendants' contention that they are entitled to qualified immunity

does not merit dismissal at this stage of the litigation.  The defense of qualified immunity is not

appropriate on a 12(b)(6) motion to dismiss unless facts supporting the defense appear on the face of

the complaint.  McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).  Although pre-answer

dismissal on qualified immunity grounds is not impossible, "[u]sually, the defense of qualified

immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which

relief can be granted."  Id. (quoting Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir. 1983)).  Taking

as true Plaintiff's allegations that Defendants Kressman and Conway beat him viciously and sprayed

him excessively with OC, dismissal on grounds of qualified immunity is unwarranted at this

juncture.


Count I: Monell Claims

        Plaintiff's sole surviving Monell claims are those for excessive force against the WC

and for deliberate indifference to inmates' medical needs against the WC and the WCHCC.  To state

a <u>Monell</u> claim, a plaintiff must allege (1) the existence of a municipal policy or custom, and (2) a causal connection between the policy and the alleged civil rights deprivation.  <u>Jones v. Westchester County Dept. of Corrections</u>, 557 F. Supp. 2d 408, 416-17 (S.D.N.Y. 2008).  However, "[u]nless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable[;] <u>Monell</u> does not create a stand-alone cause of action under which a plaintiff may sue over a governmental policy, regardless of whether he suffered the infliction of a tort resulting from the policy."  <u>Askins v. Doe No. 1</u>, 727 F.3d 248, 253 (2d Cir. 2013).  If a plaintiff fails to plausibly allege that municipal employees violated his or her constitutional rights, the plaintiff's Monell claim "necessarily fails as well" as against the municipal entity.  <u>Kajoshaj v. New York City Dep't of Educ.</u>, ___F. App'x___, 2013 WL 5614113, at *4 (2d Cir. Oct. 15, 2013).  It also "has long been well-settled that 'the mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'" <u>Zherka v. City of New York</u>, 459 F. App'x 10, 12 (2d Cir. 2012) (citation omitted).

Here, Plaintiff has failed to sufficiently allege facts supporting his claim of deliberate indifference to his medical needs as against any of the individual Defendants, therefore, his <u>Monell</u> claim necessarily fails.  <u>See</u> Kajoshaj, 2013 WL 5614113, at *4.  In Plaintiff's <u>Monell</u>-based excessive force claim, Plaintiff alleges that Kressman and Conway used excessive force on him and that their actions were part of the WC's pattern or practice of using excessive force against inmates. To support this <u>Monell</u> claim, Plaintiff has produced excerpts from the November 30, 2009, DOJ's Findings Letter, which uncovered evidence of a practice of the ERT using excessive force against inmates at the WCJ.  (SAC ¶ 23.)  Although Kressman and Conway were not part of the ERT team, the ERT team was involved in the September 15, 2008, incident.  (<u>Id.</u>)  Moreover, throughout the

SAC, Plaintiff alleges that there was a custom and practice of using excessive force against inmates at the WCJ, which led to the use of excessive force by individual officers.  See, e.g., Connick v. Thompson, 131 S. Ct 1350, 1358, n. 5 (2011) (citation omitted) (plaintiff must identify a municipal policy as "the moving force" that "actually caused" the constitutional violation).  Accordingly, Plaintiff has pleaded a viable constitutional claim, and, therefore, Defendants' motion to dismiss his Monell claims for excessive force is denied.


CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the SAC is granted pursuant to Federal Rule of Civil Procedure 12(b)(6) as to all claims other than Plaintiff's excessive force claims against Kressman and Conway (Count II) and his Monell claim for excessive force against the WC (Count I).  Counts I, III, IV, V, VI and VII are dismissed in their entirety.  The SAC is dismissed as against all Defendants other than WC, Kressman and Conway.

This Memorandum Order resolves docket entry numbers 45 and 64.  This case remains referred to Magistrate Judge Ellis for general pretrial management.


SO ORDERED.

Dated: New York, New York
       November 27, 2013


_____
        /S
LAURA TAYLOR SWAIN
United States District Judge